**H. W. CARRIGAN, Appellant,**

v.

**Stella Winn GOLDMAN, Appellee.**

**No. 15336.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 27, 1968.

Rehearing Denied Sept. 5, 1968.

Thomas S. Terrell, Harman Parrott, Houston, for appellant. Sewell, Junell & Riggs, Houston, of counsel.

Mike Willatt, Houston, for appellee. Carroll, Matthews & Willatt, Houston, of counsel.

PEDEN, Justice.

This is an appeal from the overruling of a plea of privilege filed by H. W. Carrigan, conductor on a freight train which was struck by an automobile driven by Mrs. Goldman. Carrigan was sued in a county other than his residence. The hearing was before the court without a jury; findings of fact and conclusions of law were neither requested nor filed.

Under the evidence adduced at the hearing, appellee must rely on the negligence provision, Subdivision 9a of Article 1995, Vernon's Annotated Civil Statutes, to support venue in Brazoria County as to defendant Carrigan. She must show that the crossing in question was extra-hazardous, that Carrigan knew or should have known this, that he was negligent in not warning motorists of this condition or by cutting the train and that such negligence was a proximate cause of her injuries.

Among other points of error, appellant contends that there was insufficient evidence to support the court's implied finding that the crossing was extra-hazardous. Also, that there was insufficient evidence to support the court's implied finding that Carrigan had notice or was charged with notice of any dangerous conditions.

■ We sustain the latter point. There is little in the record to indicate that the crossing in question is extra-hazardous; we hold that the evidence is insufficient to support an implied finding that Carrigan had either actual or constructive notice that the crossing was extra-hazardous.

The evidence is largely uncontradicted. We will first review that touching on the nature of the crossing. Mrs. Goldman was driving a friend's 1960 model Ford in a northerly direction in the 300 block of South Anderson Street in Angleton, Brazoria County, a little after midnight on September 1, 1964, when she struck a freight car in a long Missouri Pacific train which was stopped, blocking the crossing. The crossing was not lighted, and the only warning device present was a railroad cross-buck which was on the north side of the tracks. Its location is not a condition to be considered in determining whether the crossing was extra-hazardous, however. Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W.2d 925 (1953). The night was dark and clear, but there was no rain or fog. The street has two lanes and is topped with asphalt; it is in a rather sparsely settled part of Angleton, and there is no indication that it is heavily traveled. A witness testified that there was some Johnson grass growing beside the street which was three or four feet high.

Appellee's principal basis for her allegation that the crossing is unusually dangerous is the testimony of her witnesses that the road makes a sharp hump as it goes over the tracks; this causes the freight cars to be higher than an automobile's headlights shine, and the lights do not pick up a train stopped at the crossing until they are fifty to sixty feet from it. Mrs. Goldman introduced a chart prepared by the Brazoria County Surveyor which shows that South Anderson Street has an elevation of fifteen feet above sea level at a point 500 feet south of the crossing. In the first 300 feet from that point the elevation very gradually and rather steadily declines .8 of a foot so that the elevation is 14.2 feet at a point 200 feet from the crossing. The road then gradually rises in the next 100 feet to an elevation of 15.1 feet, and in the last 100 feet the rise is shown on the profile to be a steady one amounting to 4.11 feet, for a total elevation at the south track of 19.21 feet.

South Anderson Street is straight. It runs north and south; the railroad track runs east and west. There are no buildings or other obstructions to visibility in the last 400 feet traveled by Mrs. Goldman as she approached the crossing, with the possible exception of the Johnson grass. The speed limit is 30 miles per hour. There was no testimony of any illusion created by the lights of vehicles beyond the train shining under its cars. We do not know how long the train was stopped, but it was regularly stopped there for a few minutes each night.

We will review the evidence as to whether Carrigan had constructive notice that the crossing was an unusually dangerous one.

■ In determining whether the evidence is sufficient as a matter of law to support an implied finding of either actual or constructive notice to Carrigan that the crossing was extra-hazardous, we must disregard all evidence adverse to appellee and give credit to all evidence favorable to her, indulging every reasonable conclusion that is favorable to her. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

Carrigan testified that he had been a conductor for about 24 years. He said that on the night in question he was working at his desk in the caboose when a brakeman told him he believed somebody had hit the train. This occurred after the train had been stopped in Angleton so a brakeman could throw a switch that would let the train leave the main line and go into a yard. He said he knew the tracks were elevated above the general level of the road, but he didn't know how much. There were no lights on Anderson Street. As best they could determine, the freight car appellee hit was the 65th car back from the engine and the 34th car forward from the caboose.

Carrigan testified he had made that same run many times before but that he had never noticed the crossing in question. He was busy with his own work and had no occasion to be familiar with the crossings on that run. He said the road makes a little rise as it crosses the track, but there is no hump in that road.

As conductor, he is "boss of the train". They had fusees available. If the train was to be stopped at a crossing for ten or fifteen minutes they would have cut the train.

It is noteworthy that there is nothing in the record to indicate that Carrigan or anyone else connected with the railroad had ever heard of any previous collisions or near collisions at the crossing in question or that anyone had ever suggested that it was an extra-hazardous one. There is no evidence to show that Carrigan had ever had an opportunity to see how far back from the crossing an automobile's headlights could pick up a freight car. We have no information as to the color, dimensions or type of freight car that was hit.

■ The existing conditions which make a crossing unusually dangerous differ from case to case, as do the elements of sufficient notice of such condition. Carrigan had the right to assume, in the absence of notice to the contrary, that approaching motorists would gauge their speed according to existing apparent natural conditions, especially those affecting visibility of the road such as darkness, rain and fog; and that despite lowered visibility from such natural agencies, due care by the approaching traveler would prevent a collision with the train cars without other notice of the cars than that afforded by the cars alone. Texas & N. O. R. Co. v. Davis, 210 S.W.2d 195 (Beaumont Tex.Civ.App.1943, writ ref., n. r. e.).

In the same opinion it was stated that despite a showing of other factors, the proof of notice in that case would have been insufficient without the testimony of a deputy sheriff as to earlier accidents which had occurred under similar circumstances.

We hold that Carrigan is charged with notice of the rise in the street, the fact that the train stops there nightly and the darkness of the night but that these factors alone are not enough to support an implied finding that he knew or should have known that the crossing was extra-hazardous.

The judgment of the Trial Court is reversed and judgment is here rendered sustaining appellant's plea of privilege; the cause of action against him is ordered severed and transferred to the District Court of Kleberg County.

Reversed and rendered.